JAJ:ZA
F.#2011R02102

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

M12-0009

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      -against-

ANTHONY MATHISON,
    also known as "Pookie,"

              Defendant.

AFFIDAVIT IN SUPPORT OF
APPLICATION
FOR ARREST WARRANT
18 U.S.C. § 922(g)(1)

- - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

        JED SALTER, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

        Upon information and belief, on or about April 6, 2010, within the Eastern District of New York, the defendant ANTHONY MATHISON, also known as "Pookie," having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly and intentionally possess in and affecting commerce a firearm, to wit, a 9-millimeter Ruger handgun.

        (Title 18, United States Code, Section 922(g)(1))

The source of your deponent's information and the grounds for his belief are as follows:

1. I am a Special Agent assigned to the FBI's violent gang investigation squad. During my tenure with the FBI, I have been involved in numerous racketeering, murder, firearms, robbery and narcotics investigations and prosecutions. In the course of those and other investigations, I have conducted physical surveillance, supervised or participated in undercover transactions, executed search warrants, debriefed cooperating defendants and confidential informants, reviewed taped conversations, and secured other relevant information using other investigative techniques.

2. I have personally participated in the investigation of the offenses discussed below. I am familiar with the facts and circumstances of this investigation from reports made to me by other law enforcement authorities, from my review of surveillance videos and from my debriefings of various witnesses.

3. Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I have knowledge through others. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the arrest of

the above-specified defendant, I have not set forth each and every fact learned during the course of this investigation. Instead, I have set forth only those facts which I believe are necessary to establish probable cause to arrest.

4. On or about January 16, 2002, ANTHONY MATHISON was convicted in the Eastern District of New York for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), an offense punishable by a term of imprisonment exceeding one year. He was sentenced to 46 months' imprisonment.

4. On or about March 16, 2010, a cooperating witness, identified herein as CW[1], met with ANTHONY MATHISON in the vicinity of Sutter Avenue and Georgia Avenue in Brooklyn, New York. According to CW, MATHISON advised that he had a 9-millimeter handgun for sale for $700.

5. On or about March 30, 2010, ANTHONY MATHISON told CW over the phone that the individual from whom he was going to procure the handgun was related to MATHISON and worked in "law enforcement."[2] This conversation was recorded by the CW in accordance with instructions and equipment provided by the FBI.

---

[1] CW has pleaded guilty, pursuant to a cooperation agreement with the government, to possession of firearms in violation of 18 U.S.C. § 922(g). Information provided by CW has proven reliable and accurate in the past. Pursuant to the cooperation agreement, CW is subject to breach if he provides false information.

[2] All conversations referenced herein are described in sum and substance, unless otherwise noted.

6. On or about April 6, 2010, ANTHONY MATHISON called CW and advised that he had "got it." MATHISON asked CW if CW had the money "right now." MATHISON and CW arranged to meet near Flatbush Avenue, in Brooklyn.

7. On or about April 6, 2010, CW and ANTHONY MATHISON met near the corner of Flatbush Avenue and Linden Boulevard in Brooklyn. ANTHONY MATHISON approached the vehicle in which CW was seated and CW handed him $700 in cash. MATHISON took the cash inside a building located at 5 Linden Boulevard. A short while later, MATHISON exited the building carrying a white bag. MATHISON handed the white bag to the CW. The CW opened the bag which contained a Ruger handgun in a case marked "Ruger" and ammunition. This interaction between CW and MATHISON was recorded by the CW in accordance with instructions and equipment provided by the FBI. In addition, FBI agents and New York City Police Department officers surveiled CW and MATHISON on April 6, 2010.

8. Shortly after CW received the white bag from MATHISON, he provided it to the FBI. The FBI inspected the bag and found that it contained a 9-millimeter Ruger handgun, two magazines of ammunition and a gun lock.

9. According to records maintained by the Bureau of Alcohol, Tobacco and Firearms, all 9-millimeter Ruger handguns are manufactured outside the State of New York.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the defendant ANTHONY MATHISON so that he may be dealt with according to law.

                               JED SALTER
                               Special Agent
                               Federal Bureau of Investigation

Sworn to before me this
4 day of January, 2012

UNITED STA  S/ Azrack
EASTERN DI