UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
UNITED STATES OF AMERICA,

**MEMORANDUM**
**DECISION AND ORDER**

- against -

12-cr-0110 (BMC)
19-cv-3369 (BMC)

ANTHONY MATHISON,

Defendant.
------------------------------------------------------------ X

**COGAN**, District Judge.

Defendant seeks habeas corpus relief pursuant to 28 U.S.C. § 2255 for his conviction on two counts, each separately tried, of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), for which he received a mid-Guidelines' sentence of 204 months. Defendant had five different appointed lawyers in this case and had problems with all of them. The instant motion attributes constitutionally ineffective representation to his last two lawyers, one of whom defended him through jury verdict in the two separate trials, and the other at sentencing. His claims are without merit and the motion is therefore denied.

### BACKGROUND

The operative indictment charged defendant with three unrelated counts of being a felon-in-possession. Prior to the commencement of trial, on motion of defendant by his second lawyer, Paula Notari (defendant having already had a falling out with his first), I severed Count One from Counts Two and Three and ordered separate trials. After trial on Count One commenced with his third counsel (Kenneth Paul), defendant pled guilty to all three counts of the indictment.

Seven months later, through his fourth lawyer (Zoe Dolan), he moved to withdraw his guilty plea, complaining of the actions of his prior counsel in connection with his guilty plea. After briefing and hearings, I granted the motion to withdraw the guilty plea over the Government's objection.

Defendant then moved to suppress the gun that was the subject of Count Two. After briefing and hearings, I granted that motion, and the Government dismissed Count Two. We went to trial first on Count Three, which concerned defendant's alleged possession of a Taurus .45 caliber handgun and a Taurus 9mm handgun. The jury convicted him, and answered interrogatories showing that it had found him guilty of possessing the Taurus .45 but not the Taurus 9mm. We shortly thereafter went to trial on Count One before a different jury, and that jury convicted defendant of possessing a Ruger 9mm handgun as charged.

The presentence investigation report calculated the Guidelines based, in part, on conduct related to the counts of conviction. Specifically, the PSR sought to hold defendant responsible for the dismissed Count Two, charging possession of a Kel-Tec 9mm handgun. It also sought to hold him responsible for the shooting of an individual named Corey Marshall.

The parties then agreed that a hearing pursuant to United States v. Fatico, 603 F.2d 1053 (2d Cir. 1979), was required to resolve the Corey Marshall issue. I heard that evidence, found that defendant had indeed shot Corey Marshall, and that he had illegally possessed the Kel-Tec as charged in Count Two. I calculated defendant's Guidelines at 188-235 months custody, and imposed a sentence of 204 months. The Second Circuit affirmed defendant's conviction and sentence. United States v. Mathison, 731 F. App'x 41 (2d Cir. 2018).

In this habeas corpus petition, defendant has raised five reasons why each of his last two lawyers (Ms. Dolan and Mr. Brill, respectively) was ineffective. First, he claims that he did not

have effective representation at either of his two trials because Ms. Dolan failed to investigate and call witnesses who would have exonerated him. Second, he claims that at the trial of Count Three (and possibly at the second trial on Count One), Ms. Dolan coerced him into not testifying on his own behalf. Third, he claims Ms. Dolan failed to convey any Government plea offer to him. Fourth, he contends that at sentencing, Mr. Brill failed to object to sentencing enhancements in his Guidelines calculation. Fifth, he argues that Mr. Brill should have called my attention to Alleyne v. United States, 570 U.S. 99 (2013), in connection with the Fatico hearing.

## DISCUSSION

### I.

"Section 2255 provides that a prisoner sentenced by a federal court may move to have that sentence vacated, set aside or corrected if he or she claims that the court, in sentencing him or her, violated the Constitution or the laws of the United States, improperly exercised jurisdiction, or sentenced him or her beyond the maximum time authorized by law." Thai v. United States, 391 F.3d 491, 493 (2d Cir. 2004). However, "[b]ecause collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction" through a proceeding under § 2255 than by direct appeal. Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) (citations and quotations omitted). The statute thus allows relief "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). For each ground for relief, a petition under § 2255 must set forth "specific

facts which he is in a position to establish by competent evidence." LoCascio v. United States, 395 F.3d 51, 57 (2d Cir. 2005) (citation omitted).

To demonstrate ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 687 (1984), a defendant must show two things: (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense. A court will deem performance deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. If there is a reasonable probability that the outcome might have been different because of a legal error, the defendant has established prejudice and is entitled to relief. See Weaver v. Massachusetts, 137 S. Ct. 1899, 1910-11 (2017). But an ineffective assistance of counsel claim will fail if the defendant fails to make a sufficient showing under either of the Strickland prongs. Strickland, 466 U.S. at 697.

## II.

Defendant's claim that there were additional witnesses that would have exonerated him is far too vague to raise any material issue. Defendant identifies two witnesses on Count One as to whom defendant alleges he told Ms. Dolan – Terrell Walker and Rasul Warren – and further asserts that he told Ms. Dolan that these witnesses "were present during the controlled buy transaction with the informant, witnessed what truly occurred, and could testify to the same, including who they witnessed conduct the transaction which would conflict with the theory of the prosecution." He further asserts that he told Ms. Dolan to call "the dozen individuals present" during the incident that led to his arrest which gave rise to his conviction under Count Three, but he does not name any except to say that Troy Watson and Keyafa Faltine "could have testified that I was not the individual who had the gun … ."

4

There are multiple deficiencies in this abstract description. The most glaring is that defendant has submitted no affidavits from any of these witnesses showing that they were even willing to testify to a situation which might have carried criminal exposure, let alone what they might say if they were willing to testify without invoking their Fifth Amendment privilege. Moreover, defendant's claim that these witnesses would have exonerated him is belied by evidence introduced at trial, including the testimony of the informant and a video recording, both of which placed defendant at the controlled buy and demonstrated that defendant in fact sold the informant the gun. Even putting that aside, petitioner has not even included the hearsay information about what, in fact, they would say. For example, how would their testimony "conflict with the theory of the prosecution"? As to Count Three, if Watson and Faltine knew that defendant "was not the individual who had the gun," then how did they know, and who would they say did have the gun? If they could testify as to "what occurred," then what is it that occurred, and how were they in a position to see it?

The record before me is clear that the possibility of calling these witnesses was not at all lost on Ms. Dolan. Although I have found that defendant waived his attorney-client privilege by arguing that Ms. Dolan was ineffective, the affidavit she submitted at my direction shows that she was not comfortable disclosing otherwise privileged information. She noted that she "believe[s] the allegations … may be largely addressed without piercing the attorney-client privilege … ." With respect to Watson, she stated in her affidavit that she attempted to agree on a stipulation as to what he would testify with the Government, but the Government would not agree. As to Walker and Warren, she listed both as names that may come up at trial, and stated "at both trials, whether to call any particular witness was a strategic decision based on my assessment of relevance, cumulativeness, and individual credibility and impeachability, in light

of all pertinent information available to me at the time." It is clear that she knew what these individuals had to say, thought about calling them, and decided they would do more harm than good, although she unsuccessfully tried to get a stipulation for one witness that presumably would have allowed at least some of the good part. With respect to defendant's unnamed "dozen individuals," Ms. Dolan stated in her affidavit that she is "unable to address unspecified testimony or testimony from unnamed witnesses", which is understandable, as I can't address it either.

"The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam). Because courts are "especially hesitant to disturb such 'strategic' decisions," Pavel v. Hollins, 261 F.3d 210, 217 (2d Cir. 2001), "[c]ourts applying Strickland are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury." Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005). Thus, a trial "counsel's decision as to 'whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation.'" Id. (quoting United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000)). In addition, numerous cases reject self-serving, unsupported, or conclusory descriptions from defendants in connection with § 2255 motions. See, e.g., Purdy v. Zeldes, 337 F.3d 253, 259 (2d Cir. 2003) ("[I]n most circumstances, a convicted felon's self-serving testimony is not likely to be credible."); United States v. Wint, No. 12-cr-85, 2017 WL 1901674, at *5 (D. Vermont Feb. 3, 2017) (rejecting claims because they were conclusory, self-serving, and unsupported by the record); United States v. Yarmoluk, 993 F. Supp. 206, 209 (S.D.N.Y. 1998) (disregarding self-serving speculation, hearsay, and other inadmissible evidence in the affidavit). Defendant's affidavit falls squarely within these cases.

6

Finally, having spent quite a lot of time with this defendant, his contention that Ms. Dolan failed to investigate witnesses who actually had exculpatory information is incredible because I almost certainly would have heard about it. Defendant could not get along with any of the five lawyers appointed for him – all of whom were leading members of the CJA bar – because he felt he knew better than any of them how to defend his case. I heard about numerous strategy and personality conflicts. As described below, I even heard how defendant was fully prepared to disregard Ms. Dolan's advice not to testify on his own behalf, only changing his mind and deciding not to testify at the last minute – this happened at each trial. I have little doubt that had Ms. Dolan refused or failed to call witnesses who defendant told her would exonerate him, I would have heard about that too. It is all too easy for defendant to make this outlandish claim now.

### III.

Defendant's claim that Ms. Dolan failed to convey plea offers to him can be disposed of easily. Ms. Dolan's affidavit attests that the Government made no plea offers by the time she became involved, and the Government does not dispute that.

This is thoroughly credible. By the time Ms. Dolan became involved as defendant's fourth lawyer, the time for making a plea offer had long passed. Defendant had pled guilty to the indictment (not to a plea agreement) in the middle of his trial on Count One. Because defendant chose to proceed to trial, plead guilty, withdraw his guilty plea, and obtain suppression and dismissal of Count Two, the Government understandably lost any appetite for another plea offer. There is no reason to doubt Ms. Dolan's testimony that she relayed no plea offers to him because the Government had made none.

**IV.**

Defendant's argument concerning his right to testify is also insubstantial. The transcript of his first trial on Count Three contains a thorough colloquy between defendant, Ms. Dolan, and me concerning his right to testify. Defendant interprets that colloquy as showing that Ms. Dolan impermissibly pressured him not to testify. I interpret it as showing sound legal advice by a wise lawyer, the opposite of which would probably have been objectively unreasonable (and, considering this motion, certainly would have been challenged on that basis). Indeed, the fact that defendant was initially inclined to testify against his counsel's advice demonstrates that he knew it was his decision, not hers. And a similar, albeit briefer, colloquy occurred at the subsequent trial of Count One.

A defendant's right to testify in his own defense is personal and may not be waived by his attorney over the defendant's opposition, regardless of tactical considerations. Brown v. Artuz, 124 F.3d 73, 77–78 (2d Cir. 1997). As a result, the duty rests with counsel to "inform the defendant that the ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter." Id. at 79. Consequently, "any claim by the defendant that defense counsel has not discharged this responsibility – either by failing to inform the defendant of the right to testify or by overriding the defendant's desire to testify – must satisfy the two-prong test established in Strickland…." Id.

The colloquy in the trial of Count Three occurred when Ms. Dolan reported to the Court that defendant was inclined to disregard her advice and testify despite it. Obviously, she was making that disclosure because she wanted the record to be clear that if he was going to testify, it was over her objection, so that she would not be later accused of giving him bad advice to testify.

8

(And yet, here we are.) She articulated strong reasons, including defendant's prior convictions and his previous grand jury testimony, for making her recommendation.

The positives and negatives of defendant choosing to testify were thoroughly aired on the record. See Brown, 124 F.3d at 79. I gave defendant the clear choice of testifying or not. He changed his mind and determined to accept her advice not to testify. That was his decision, and Ms. Dolan was not objectively unreasonable in giving him her best opinion that it was the right decision.

## V.

Defendant's contention that Mr. Brill failed to object to Guidelines enhancements is difficult to understand, for he does not specify to which enhancement Mr. Brill could have reasonably objected. In fact, in his detailed, 29-page sentencing memorandum, Mr. Brill objected to the multiple firearm enhancement, the only one for which there was a colorable argument. Mr. Brill also objected to the base level of the offense, an objection which I sustained.

Moreover, Alleyne did not apply to petitioner's situation, and so Mr. Brill was objectively reasonable in not raising it. Alleyne merely held that when a finding of fact would increase a defendant's mandatory minimum sentence pursuant to a statute, that fact cannot be determined through judicial fact-finding. Here, the only increase by virtue of the shooting of Corey Marshall was in petitioner's Guidelines range, not his statutory sentencing range. As every court that has considered the issue has held, Alleyne does not require jury determination of such issues. See, e.g., United States v. Cassius, 777 F.3d 1093, 1097 (10th Cir. 2015); United States v. Ramirez-Negron, 751 F.3d 42, 48 (1st Cir. 2014); United States v. Valdez, 739 F.3d 1052, 1054 (7th Cir. 2014); United States v. Hilson, 538 F. App'x 15, 18 (2d Cir. 2013) (citing

United States v. McLeod, 251 F.3d 78, 82 (2d Cir. 2001)); United States v. Williams, 537 F. App'x 237, 239 (4th Cir. 2013); United States v. Johnson, 732 F.3d 577, 583-84 (6th Cir. 2013).

## VI.

For a § 2255 petition, a court must hold an evidentiary hearing "[u]nless the motion and files and records of the case conclusively shows that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). An evidentiary hearing is not required "when the allegations on a motion ... merely contradict the record, are inherently incredibly, or are simply conclusory." United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992).

I have concluded that a further hearing is not necessary in this matter for three reasons. First, as suggested above, I am very familiar with petitioner's underlying criminal case and his demeanor. See Puglisi v. United States, 586 F.3d 209, 214 (2d Cir. 2009) ("[W]hen the judge that tried the underlying proceedings also presides over the Section 2255 motion, a less-than-full-fledged evidentiary hearing may permissibly dispose of claims where the credibility assessment would inevitably be adverse to the petitioner."). Second, the transcript of the trial and the presentence investigation report conclusively refute most of his claims. See Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (district court may consider documentary evidence in lieu of full hearing). Finally, petitioner's exculpatory witness claim is too vague and conclusory to require further inquiry. See Machibroda v. United States, 368 U.S. 487, 495-96 (1962).

## CONCLUSION

The motion for a writ of habeas corpus is denied. Since the motion presents no substantial constitutional issue, a certificate of appealability shall not issue. See 28 U.S.C. § 2253(c). Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this

Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  See <u>Coppedge v. United States,</u> 369 U.S. 438 (1962).

**SO ORDERED.**

                                                                             _____
                                                                                                 U.S.D.J.

Dated:  Brooklyn, New York
         February 6, 2020